955 So.2d 345 (2006)
DUNLAP ACRES, LTD. and Shannon Rentals, Ltd., Appellants
v.
INTERVEST DEVELOPMENT CORPORATION, Intervest Partners Corporation, Intervest Corporation, West Point Housing, L.P., Shannon Housing, L.P., J. Steve Nail and Rodney H. Dudley, Appellees.
No. 2005-CA-01271-COA.
Court of Appeals of Mississippi.
August 29, 2006.
Rehearing Denied January 16, 2007.
Certiorari Denied April 12, 2007.
*346 Brenda B. Bethany C. Michael Ellingburg, Jackson, Attorneys for Appellants.
Brooks R. Buchanan, Jackson, Attorney for Appellees.
EN BANC.
IRVING, J., for the Court.
¶ 1. This controversy is over the appropriate interest rate that is due under two promissory notes that are in default. The chancellor concluded that the proper rate was the legal rate of eight percent (8%). Dunlap Acres, Ltd. and Shannon Rentals, Ltd. appeal and argue that the promissory notes provided for a higher interest rate.
¶ 2. We find no merit to Dunlap's argument. Therefore, we affirm the judgment of the chancellor.

FACTS
¶ 3. The relevant facts are not in dispute. Dunlap Acres, Ltd. ("Dunlap") developed a fifty-unit multi-family property, known as Dunlap Acres, in West Point, Mississippi. Shannon Rentals, Ltd. ("Shannon") developed a forty-eight-unit multi-family property, known as Shannon Rentals, in Shannon, Mississippi. In 1996, Intervest Development Corporation (Intervest) entered into negotiations with both Dunlap and Shannon for the purchase of both properties.
¶ 4. On April 11, 1996, Shannon sold the Shannon Rentals property to Intervest for the price of $132,400. As part of the sale, Shannon Housing, L.P. and Intervest, Shannon Housing L.P.'s general partner, executed a promissory note to pay Shannon the sum of $132,400. The promissory note was guaranteed by Intervest, Intervest Partners Corporation, J. Steve Nail, and Rodney H. Dudley.
¶ 5. On September 30, 1996, Dunlap sold the Dunlap Acres property to Intervest for the price of $140,000. As part of the sale, West Point Housing, L.P. and Intervest, West Point Housing, L.P.'s general partner, executed a promissory note to pay Dunlap the sum of $140,000. The promissory note was guaranteed by Intervest, Intervest Partners Corporation, J. Steve Nail, and Rodney H. Dudley.
¶ 6. In 1998, Dunlap commenced this action by filing a complaint against Intervest, Intervest Partners Corporation, Intervest Corporation, West Point Housing, L.P., Shannon Housing L.P., J. Steve Nail, and Rodney H. Dudley. On October 17, 2000, the chancellor issued an opinion and order on Dunlap's and Shannon's motion for partial summary judgment that determined the amounts owed on the notes. On August 7, 2002, the chancellor issued an opinion and order on Dunlap's and Shannon's second motion for partial summary judgment that determined that the interest rate owed on the notes was eight percent (8%), pursuant to Mississippi Code Annotated section 75-17-1(1) (Supp.2005). On June 1, 2005, the chancellor entered an amended final judgment which held (1) that Intervest; Intervest Partners Corporation; West Point Housing, L.P.; Shannon Housing, L.P.; J. Steve Nail, and Rodney H. Dudley were in default and were liable to Dunlap and Shannon under *347 the terms of the promissory notes for the purchase of the two parcels of property, and (2) that Intervest Corporation was not a party to the promissory notes and was not liable. The judgment also awarded $8,726.50 as reasonable attorneys' fees and reaffirmed the chancellor's earlier ruling that established the applicable interest rate on the promissory notes at eight percent (8%). It is from this final judgment that Dunlap and Shannon appeal.[1]

STANDARD OF REVIEW
¶ 7. Since the issue is one of law, the chancellor's finding that the appropriate interest rate is eight percent (8%) is reviewed de novo. Miss. State Highway Comm'n v. Patterson, 627 So.2d 261, 263 (Miss.1993).

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. The only issue raised on appeal is whether the chancellor erred in her determination of the interest rate to be applied. Apparently, neither party sought to introduce parol evidence at the trial court level, as there is no issue or argument here that parol evidence should or should not have been allowed to illuminate the issue.
¶ 9. The promissory notes are virtually identical and contain the following language with regard to interest: "The whole of the principal sum and, to the extent permitted by law, any accrued interest, shall bear, after default, interest at the highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi or of the United States of America." (emphasis added).
¶ 10. We begin by quoting the entire summary of Dunlap's argument as set forth in its brief: "There is no construction of law which would enable Defendants [Appellees] to avoid liability to Plaintiffs [Appellants] for interest at the maximum rate allowable by law as specified in the contracts. That rate is 15% compounded annually." We will return to a discussion of this summary statement later in this opinion.
¶ 11. Dunlap and Shannon rely on Mississippi Code Annotated section 75-17-1(3) (Supp.2005), which provides:
Notwithstanding the foregoing and any other provision of law to the contrary, any partnership, joint venture, religious society, unincorporated association, or domestic or foreign corporation, whether organized for profit or nonprofit, may contract for and agree to pay a finance charge which will result in a yield not to exceed the greater of fifteen percent (15%) per annum or five percent (5%) per annum above the discount rate, excluding any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the lender is located, each calculated according to the actuarial method, on any contract, loan, extension of credit or other obligation under which the principal balance to be repaid shall originally exceed Two Thousand Five Hundred Dollars ($2,500.00), or on any series of advances of money pursuant to a contract if the aggregate of sums advanced or originally proposed to be advanced shall exceed Two Thousand Five Hundred Dollars ($2,500.00); and as to any such agreement, the claim or defense of usury by such partnership, joint venture, religious society, unincorporated *348 association, or corporation, or their successors, guarantors, assigns or anyone on their behalf is prohibited.
¶ 12. The chancellor rejected Dunlap's argument and agreed with Intervest that Mississippi Code Annotated section 75-17-1(1) was applicable. Section 75-17-1(1) provides that, "[t]he legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method, but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law." The chancellor held that "in viewing the evidence in the light most favorable to the non-moving party this Court finds that consistent with [section] 75-17-1(1) the higher contract interest rate should have been in writing and the specific rate was not; therefore, this court finds that the 8% rate is applicable."
¶ 13. In resolving the issue before us, we look to the language of the promissory notes. "The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." Cherry v. Anthony, 501 So.2d 416, 419 (Miss.1987). "Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." Facilities, Inc. v. Rogers-Usry Chevrolet, 908 So.2d 107, 111(¶ 7) (Miss. 2005). "[O]ur focus is upon the objective factthe language of the [promissory notes]." Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss.1989). We are not concerned with some secret thought or idea that may have reposed with one of the parties but which was not communicated to the other party. "When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses." Facilities, Inc., 908 So.2d at 111(¶ 7).
¶ 14. We conclude that the chancellor objectively interpreted the plain language of the promissory notes and reached the correct result. The notes provide that interest will be paid "at the highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi or of the United States of America." The key phrase is "rate then in effect." While interest will be paid at the highest rate, that rate must be in effect at the time of the default. The common and ordinary meaning of something that is in effect is that it is in full force, operating, and functioning. The only rate in effect under the laws of the State of Mississippi when the default occurred was the default interest rate set forth in section 75-17-1(1).
¶ 15. An interest rate of fifteen percent is not presently the interest rate in effect in Mississippi. It was not the interest rate in effect when the promissory notes were executed or when the default occurred. While an interest rate of fifteen percent is allowed, it has to be placed in effect by the contracting parties. In other words, as the learned chancellor found, the parties have to contract for a specific rate of fifteen percent in order to place that rate in effect. That, the parties did not do.
¶ 16. Interestingly, as we have already noted, Dunlap, in summarizing its argument in its brief to this Court, says Intervest obligated itself by contract documents (the promissory notes) to pay "interest at the maximum rate allowable by law as specified in the contracts." The key phrase in this argument is "allowable by law." However, the promissory notes do not obligate Intervest to pay interest at *349 the maximum rate allowable by law. The plain wording of the notes obligates Intervest to pay interest at the highest lawful rate then in effect. The highest interest rate that is allowable by law is not the highest interest rate that is in effect by law. If we were to accept Dunlap's interpretation of the language of the notes, we would have to find that, although no specific interest rate percentage is included in the interest provision, interest is to be paid at some figure which could be astronomical. We reach this conclusion because section 75-17-1(5), a subsection detailing the amount of finance charges that parties may agree to pay, seems to permit such a result.[2]
¶ 17. While the dissent does not say so explicitly, it apparently concludes that section 75-17-1(3) is the appropriate code section to apply because, and only because, this section allows parties to contract for interest at the specific rate of fifteen percent per annum. The problem with this reasoning is that, while section 75-17-1(5) does not include the specific figure of fifteen percent per annum, it certainly appears to allow parties to contract for interest at a rate greater than or less than fifteen percent. If the parties contracted that interest will be paid at the highest lawful rate, how can it then be said that the rate of fifteen percent is the highest lawful rate? It cannot be because the parties included that figure in the promissory notes. They did not. Logically, the only reason for this conclusion by the dissent is that the fifteen percent figure is the highest interest figure specifically mentioned in the statutory interest provisions. However, does that make it the highest lawful interest rate? It does not. And since the dissent and Dunlap believe that the promissory notes obligate Intervest to pay interest at the highest lawful rate, why are they willing to settle for something considerably less? The dissent admits that section 75-17-1(5) permits a far higher interest rate than fifteen percent.
¶ 18. In concluding that a fifteen percent interest rate should apply, the dissent seems fixated on only a portion of the wording used by the parties, and by so doing, fails to heed the teachings of Facilities, Inc., that a contract must be read as a whole, giving effect to all of its clauses. The dissent believes our interpretation does not give effect to the word "highest," but we do not believe the dissent gives effect to the phrase "then in effect." We take one last look at the wording of the promissory notes: "any accrued interest, shall bear, after default, interest at the highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi or of the United States of America." The phrase, "in effect," modifies or limits the phrase, "highest lawful rate." We reiterate: only one interest rate, was and is "in effect" in this state. Certainly, contracting *350 parties may place other rates in effect in their particular transaction. But, to do so, the rate has to be specified.
¶ 19. The dissent also suggests that if the chancellor found the interest provision ambiguous, she should have allowed parol evidence. First, that is not an issue in this appeal, and second, the chancellor did not find the provision ambiguous, even though Intervest urged that position.
¶ 20. Accordingly, we affirm the judgment of the chancellor.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., AND CHANDLER, J., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, BARNES, ISHEE AND ROBERTS, JJ.
GRIFFIS, J., DISSENTING.
¶ 22. I disagree with the majority's decision to affirm the chancellor's decision that the proper interest rate due under two promissory notes was the legal rate of eight percent (8%). Accordingly, I dissent.
¶ 23. This is a contract interpretation issue. The result is determined by the interpretation of the language of the promissory notes and the proper application of Mississippi Code Annotated Section 75-17-1. The majority and I simply disagree on which subsection applies. Section 75-17-1 actually provides for five categories that allow for differing rates of interest: eight percent, ten percent, fifteen percent, or an unlimited percent, depending upon certain circumstances. I begin with an analysis of the different parts of Section 75-17-1.
¶ 24. Subsection (1) provides that the "legal rate of interest . . . shall be eight percent (8%) per annum . . . but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law." Thus, subsection (1) sets the "legal rate of interest," i.e., the default rate, at eight percent, and it allows the parties to agree to a higher or lower amount.
¶25. Subsection (2) provides that parties may "contract for and agree to pay" interest "which will result in a yield not to exceed the greater of ten percent (10%) per annum or five percent (5%) per annum above the discount rate."
¶26. Subsection (3) provides:
Notwithstanding the foregoing and any other provision of law to the contrary, any partnership, joint venture, religious society, unincorporated association, or domestic or foreign corporation, whether organized for profit or nonprofit, may contract for and agree to pay a finance charge which will result in a yield not to exceed the greater of fifteen percent (15%) per annum or five percent (5%) per annum above the discount rate, excluding any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the lender is located, each calculated according to the actuarial method, on any contract, loan, extension of credit or other obligation under which the principal balance to be repaid shall originally exceed Two Thousand Five Hundred Dollars ($2,500.00), or on any series of advances of money pursuant to a contract if the aggregate of sums advanced or originally proposed to be advanced shall exceed Two Thousand Five Hundred Dollars ($2,500.00); and as to any such agreement, the claim or defense of usury by such partnership, *351 joint venture, religious society, unincorporated association, or corporation, or their successors, guarantors, assigns or anyone on their behalf is prohibited.
Under this subsection, if the principal amount is greater than $2,500, the parties may agree to pay interest up to fifteen percent. However, since individuals are excluded, subsection (3) applies only to partnerships, corporations, and the like. Subsection (3) is applicable to the parties in this dispute.
¶ 27. Subsection (4) provides that parties may "contract for and agree to pay" interest "which will result in a yield not to exceed the greater of ten percent (10%) per annum or five percent (5%) per annum above the index of market yields of the Monthly Twenty-Year Constant Maturity Index of Long-Term United States Government Bond Yields . . . on any loan, mortgage or advance which is secured by a lien on residential real property. . . ."
¶ 28. Subsection (5) provides that parties may "may contract for and agree to pay . . . any finance charge agreed to in writing by the parties" as long as the principal balance is greater than $2,000. Thus, under subsection (5), the parties may agree to pay an rate of interest as long as the amount agreed to is in writing.
¶ 29. Now, I turn to the contract to be interpreted, i.e., the promissory notes. The April 11, 1996 note provided that the maker, Shannon Housing, L.P., agreed to pay the sum of $132,400 in three installments. Likewise, the September 30, 1996 note provided that the maker, West Point Housing, L.P., agreed to pay the sum of $140,000 in three installments. Neither note provided for the payment of interest if the installments were made timely. The were principal only and zero interest notes. Interest would only accrue upon default of the maker. Both notes contain the following provision:
The whole of the principal sum and, to the extent permitted by law, any accrued interest, shall bear, after default, interest at the highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi or of the United States of America.

(emphasis added).
¶ 30. In Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 110-11 (¶¶ 5-7) (Miss.2005), the Mississippi Supreme Court reversed this Court and provided the following summary of the law of contract interpretation:
"`Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder.'" Parkerson v. Smith, 817 So.2d 529, 532 (Miss.2002) (quoting Miss. State Highway Comm'n v. Patterson Enters., Ltd., 627 So.2d 261, 263 (Miss.1993)). We, as an appellate court, employ the de novo standard of review for questions of law. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997).
"The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (Miss.2003) (citing Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989)). "`In contract construction [cases, this Court's] focus is upon the objective fact-the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other.'" Turner v. Terry, 799 So.2d 25, 32 (Miss.2001) (quoting Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss.1989)).
This Court has stated:

*352 This Court has set out a three-tiered approach to contract interpretation. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 351-53 (Miss.1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. [Cooper v. Crabb, 587 So.2d 236, 241 (Miss.1991). . . .] First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pursue Energy Corp., 558 So.2d at 352 (citing Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. McKee v. McKee, 568 So.2d 262, 266 (Miss.1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Simmons v. Bank of Miss., 593 So.2d 40, 42-43 (Miss.1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. Id. (citing Cooper, 587 So.2d at 241). On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Pursue Energy Corp., 558 So.2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. Id. "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." Turner, 799 So.2d at 32; Cherry v. Anthony, 501 So.2d 416, 419 (Miss.1987).
Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Pursue Energy Corp., 558 So.2d at 352. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. Leach v. Tingle, 586 So.2d 799, 801-02 (Miss. 1991) (citing Stampley v. Gilbert, 332 So.2d 61, 63 (Miss.1976)). Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. [Pursue Energy Corp., 558 So.2d at 353]. It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

Royer, 857 So.2d at 752-53 (¶¶ 10-11) (emphasis added).
¶ 31. This issue came before the chancellor on the second motion for partial summary judgment filed by Dunlap and Shannon. In the first motion, Dunlap and Shannon asked the chancellor to enter a partial summary judgment finding the defendants in default of the payment terms. In response, the defendants claimed that the payment provisions were ambiguous, that they were not in default, and that summary judgment was not appropriate. The chancellor relied on the defendants' admission, in their response to interrogatories, that they owed $125,000 on the Dunlap note and $72,400 on the Shannon note to grant partial summary judgment. Thus, the chancellor found that the defendants were in default of the payment terms of the promissory notes and Dunlap *353 and Shannon were entitled to summary judgment on that issue.
¶ 32. In the second motion for summary judgment, Dunlap and Shannon asked the chancellor to enter another partial summary judgment to adjudicate the interest at the rate of fifteen percent. To support the motion, Dunlap and Shannon relied on the chancellor's first order granting partial summary judgment, the promissory notes, the affidavit of their general partner calculating the interest due at fifteen percent, and an interest calculation. Again, in their response, the defendants countered that the interest provision was ambiguous. Their memorandum, filed in the record, claimed that Section 75-17-1 contains "three different interest rates, all of which are arguably applicable. Those rates are 8 percent, 10 percent, and 15 percent. The parties never addressed which of those three rates would apply." Further, the defendants argued that the "motion should be denied. The interest provisions are poorly drafted and provide the reader with no concrete impression as to what the interest rate should be. Therefore, the provisions are ambiguous and create issues of material fact. The ambiguity also prevents the interest provisions from being enforced, at all." The chancellor held that "in viewing the evidence in the light most favorable to the non-moving party this court finds that consistent with § 75-17-1(1) the higher contract interest rate should have been in writing and the specific rate was not therefore, this court finds that the 8% rate is applicable."
¶ 33. I am of the opinion that partial summary judgment was proper. On de novo review, I am of the opinion that the interest provisions of the promissory notes were not ambiguous. The parties' intent can be ascertained through an objective reading of the words employed in the promissory notes. Facilities, Inc., 908 So.2d at 110-11 (¶¶ 5-7).
¶ 34. The proper interpretation of the interest rate in the promissory notes is governed by Section 75-17-1(3). The parties did not agree that interest would accrue at the "legal rate." Miss.Code Ann. § 75-17-1(1). Instead, the parties agreed that the principal "shall bear . . . interest at the highest lawful rate." I am of the opinion that the "highest lawful rate then in effect" was fifteen percent (15%), pursuant to Section 75-17-1(3).
¶35. The parties use of the word "highest" before "lawful rate" is significant. It may not be disregarded. It must be accorded meaning because the parties inclusion indicated their agreement to give it meaning. The use of the word "highest" logically indicates that there is a lower rate. In Section 75-17-1(3), the Legislature enacted a law that provided that the "highest lawful rate" was "not to exceed the greater of fifteen percent (15%) per annum or five percent (5%) per annum above the discount rate." Thus, the Legislature established the "highest lawful rate" that was applicable to the parties involved in this transaction and this litigation. Therefore, I conclude that fifteen percent (15%) per annum is the "highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi."
¶ 36. I will address the majority's rationale. The majority seems to argue that since no specific amount was included the interest rate could be "astronomical." The problem with this argument is the Section 75-17-1(5) requires that any such rate be agreed to in writing. The parties could have agreed to interest at the rate of twenty percent (20%), fifty percent (50%) or one thousand percent (1,000%). However, since they did not agree to any of these interest rates, subsection (5) is subject to the fifteen percent (15%) maximum legal rate provision of subsection (3). Subsection (5) is clearly and plainly not applicable to these circumstances.
*354 ¶ 37. The majority's most compelling argument is that the phrase "rate then in effect" can only be interpreted to point to section 75-17-1(1) because it was the "only rate in effect . . . when the default occurred." I disagree. Under 75-17-1(3), it was lawful and legal for the parties to agree to an interest rate of up to fifteen percent. Subsection (3) authorized by law the parties to contract for fifteen percent interest. If an interest rate of fifteen percent is authorized by law then it is both "legal" and "lawful". Section 75-17-1 authorized the parties to agree to eight percent, ten percent or fifteen percent. Fifteen percent, under subsection (3), was the "highest lawful rate then in effect."
¶ 38. The majority's opinion fails to consider the parties' decision to include the word "highest." The effect is that the majority rationale deletes or omits this word from the promissory notes without an explanation. Certainly, the majority gives no effect to the inclusion of the word "highest." If the promissory notes simply said interest was due at the "lawful rate in effect," the majority would be correct to apply Section 75-17-1(1). Likewise, if the notes said nothing of a specific interest rate, the majority would be correct to apply Section 75-17-1(1). This Court must give effect to the parties' decision to incorporate the word "highest" before the words "lawful rate of interest in effect." Undoubtedly, the parties' use of the word "highest" indicates that there is a lower rate. I cannot agree with the majority as long as they disregard the parties' use of the word "highest" in the promissory notes. The notes were not silent; rather, the parties agreed for interest to bear at a rate higher than the default rate.
¶ 39. Accordingly, I conclude that the chancellor failed to consider the plain language used in the promissory notes. The notes provided that interest shall accrue "at the highest lawful rate then in effect." Pursuant to Section 75-17-1(3), the highest lawful rate was fifteen percent (15%). It was error for the chancellor, and now the majority of this Court, not to give effect to the parties' agreement that after default the notes would bear "interest at the highest lawful rate then in effect pursuant [to] the laws of the State of Mississippi or of the United States of America.".
¶ 40. I continue with my analysis to consider yet another issue, albeit a procedural one. The only motion before the chancellor asked for a partial summary judgment finding the appropriate interest rate at fifteen percent. The defendants responded saying that the provision was ambiguous, and no interest should be charged. To reach the defendants' position, it would require the chancellor to find that a genuine issue of a material fact was in dispute over the amount of interest. The defendants did not just argue that the eight percent rate was correct; indeed, they also argued that there was a genuine issue of material fact in dispute because no interest should be charged. The defendants argued that the interest provisions were ambiguous. If so, the proper actions, as argued by the defendants, was to deny the motion for partial summary judgment and litigate the issue.
¶ 41. Instead, the chancellor held that "in viewing the evidence in the light most favorable to the non-moving party this Court finds that consistent with § 75-17-1(1) the higher contract interest rate should have been in writing and the specific rate was not therefore, this court finds that the 8% rate is applicable." The majority correctly recognizes that neither party presented "evidence" in dispute. So we are left to consider what evidence the chancellor viewed in the light most favorable to the defendants. Dunlap and Shannon argued that the language was not ambiguous and the proper rate was fifteen percent. The defendants argued that the *355 language was ambiguous. If the chancellor found that the language was unambiguous, as proposed by Dunlap and Shannon, the chancellor could have entered partial summary judgment and assessed interest at fifteen percent. If the chancellor found the language was ambiguous, as proposed by the defendants, the chancellor should have moved to the next step in the interpretation of ambiguous contracts, i.e., allowing the introduction of extrinsic or parol evidence to ascertain the parties' intent. In Pursue Energy Corp. v. Perkins, 558 So.2d 349, 353 (Miss.1990), the court held:
Application of "canons" of construction may provide a court with an objective inference of the parties' intent. But if, at this step in the process, intent remains unascertainable (i.e., the instrument is still considered ambiguous), then the court may resort to a final tier in the three-tiered process of construction. This final tier entails consideration of extrinsic or parol evidence. In other words, consideration of the totality of the circumstances attendant the devising of an instrument may help reveal the parties' intent.
¶ 42. The foundation for the majority's decision is that the promissory notes were ambiguous as to the amount of interest to be charged. Thus, the default rate was the "lawful rate then in effect." Accepting such logic, the majority should at a minimum reverse and remand for the chancellor to consider extrinsic or parol evidence to determine the intent of the parties.
¶ 43. I respectfully dissent. I would reverse and render judgment in favor of Dunlap and Shannon.
SOUTHWICK, BARNES, ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.
NOTES
[1] For brevity and clarity in the remainder of this opinion, we refer to the Appellants as Dunlap and the Appellees as Intervest.
[2] Section 75-17-1(5) reads as follows:

Notwithstanding the foregoing and any other provision of law to the contrary, any borrower or debtor may contract for and agree to pay and any lender or extender of credit may contract for and receive any finance charge agreed to in writing by the parties, notwithstanding that such charge is in excess of that otherwise allowed on any contract, credit sale, obligation or other extension of credit, regardless of the security taken or the purpose of the extension of credit, under which the principal balance to be repaid originally exceeds Two Thousand Dollars ($2,000.00), or on any series of advances of money pursuant to a contract if the aggregate of sums advanced or originally proposed to be advanced exceeds Two Thousand Dollars ($2,000.00), or on any extension or renewal thereof; and as to any such agreement, the claim or defense of usury or violation of any law prescribing, limiting or regulating the rate of finance charge by any borrower or debtor, or his successors, guarantors, assigns or anyone on his behalf is prohibited.