*1176
 
 ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Floyd Marshall filed a complaint in the Chancery Court of the First Judicial District of Hinds County against Carolyn Lindsly seeking relief, including specific performance of a lease agreement and commercial property contract. In return, Lindsly filed a Rule 12(b)(6) motion to dismiss and a counterclaim for eviction and damages. Following a trial on the merits, the chancery court found that Marshall’s complaint and Lindsly’s counterclaim were partially well taken and granted certain relief requested by each party. Aggrieved, Marshall appeals, asserting that although the chancery court was correct in ordering specific performance of the contract, it erred in (1) failing to credit Marshall for all periodic payments he made to Lindsly’s agent after timely exercising the option to purchase contained in the lease agreement, (2) ordering Marshall to pay Lindsly’s attorney’s fees, and (3) failing to order Lindsly to pay Marshall’s attorney’s fees.
 

 FACTS
 

 ¶ 2. This case concerns a contract dispute involving a commercial lease agreement that Marshall and Lindsly entered into on September 7, 2004, for a hardware store located at 558 West Northside Drive in Jackson, Mississippi (hereinafter referred to as “the Property”). The lease agreement contained an option to purchase clause which provided Marshall with financial guidelines and timelines if he wished to purchase the Property.
 

 ¶ 3. On or about January 10, 2005, Marshall wrote a letter to Joe Dove, who was acting as the Property’s real estate agent and property manager, expressing his intent to purchase the Property. In his letter, Marshall wrote the following:
 

 This letter is to respond to you concerning my intent to purchase property at 558[W]est [N]orthside [D]r. Please accept this letter as my notice of intent to purchase the above mention[ed] property. We need to set up arrangements to do all the legal work and also a closing date. I am sending you [the] January lease amount [and we] also need to determine the best way to handle any other payment until sale completion.
 

 Marshall’s letter also informed Dove that he hoped they could arrange a time to meet and begin the process during the first week of February, as he would be traveling a great deal throughout the rest of that month. Dove contacted Don McLemore, a real estate attorney, to conduct a title search and close the transaction. The commercial property contract was executed by Marshall on February 16, 2005, and by Lindsly on February 18, 2005.
 

 ¶ 4. Dove was out of the country at the beginning of April, but Marshall and McLemore attempted to keep the transaction moving forward. Marshall asked to take title of the property in the name of Phoenix II Enterprises, LLC; however, the loan papers had to be in Marshall’s name because McLemore was unable to acquire a copy of the certificate of formation for Phoenix II Enterprises, LLC from the Secretary of State. McLemore emailed Marshall on April 14, 2005, stating that the closing date would be the following day, Friday, April 15, at 2:00 p.m. He requested that Marshall bring a certified check for closing costs in the amount of $15,450.33, a personal check in case the monetary amount changed, a current driver’s license, an additional form of identification, and a copy of the proof of insurance with proof of payment attached. Marshall responded to McLemore’s e-mail at 3:30 a.m. EDT on Friday, April 15, and said that he would not be able to make the 2:00 closing that afternoon. McLemore replied
 
 *1177
 
 later that morning at 9:20 a.m. advising Marshall that the closing amount had increased to $16,452.23 due to the addition of taxes for the period of the lease.
 

 ¶ 5. On Tuesday, April 19, 2005, McLe-more sent Marshall another e-mail letting him know that the funds to close changed as of that day. The e-mail also stated that Lindsly had executed the necessary closing documents on Friday, April 15, and that the contract required for the closing to take place within a reasonable time after the title was cured; otherwise, Marshall would be considered in breach of contract. Marshall responded that after reviewing Item 27 in the lease agreement and Item 10 in the commercial property contract, he believed that the amount due from the borrower should be $9,875.
 

 ¶ 6. Dove mailed Marshall a letter on July 6, 2005, which informed Marshall that he was in default of the terms of the signed lease agreement. The letter stated that Marshall owed $5,250 for his third quarter lease payment and $539.32 for tax reimbursement. Dove followed up with emails regarding the status of the transaction on July 12, 2005, and July 26, 2005. The e-mails continued back and forth for several months, but little progress was made. It warrants mentioning that during this time, Dove was faced with a number of family issues, one of which was the death of his mother; as a result, he was away from the office more often than he would have been under normal circumstances.
 

 ¶ 7. Eventually, Marshall employed an attorney, Sorie Tarawally, to represent him in the matter. Tarawally wrote letters to Dove on June 8, 2006, and August 25, 2006, regarding his representation of Marshall and issues relating to the closing on the Property. Then, on January 10, 2007, Tarawally wrote a letter to Dove informing him that, effective immediately, Marshall would begin paying rent due into an escrow account or as directed by court order. The letter further stated that a lawsuit would be initiated within thirty days from that date for specific performance of the contract of sale. Lindsly also hired an attorney, and she sent official notice to Marshall requesting that he vacate the premises.
 

 ¶ 8. Marshall filed a complaint for specific performance and other relief on February 12, 2007. Lindsly, in turn, filed her answer, defenses, motion to dismiss, and counterclaim for damages and punitive damages. On March 30, 2007, Cook Commercial Properties sent two invoices to Marshall stating that he owed $12,270 in past-due rent and $4,177.58 in past-due taxes. Lindsly filed an amended answer, defenses, counterclaims, motion to dismiss, motion for injunctive relief, and for other emergency relief on April 12, 2007. Marshall then filed his motion to allow amendment of the original complaint on June 5, 2007. Finally, on June 15, 2007, Marshall and Lindsly presented testimony and evidence at trial.
 

 ¶ 9. The final judgment and opinion of the court was rendered on September 10, 2007. The chancellor ordered for the closing on the Property to occur no later than September 20, 2007, and she found that Marshall owed a total of $127,391.93, which included the $125,000 purchase price of the Property; $611 for attorney’s fees; $1,002 for prorated taxes; $532.35 for county taxes; and $246.58 for interest. The chancellor also found that Marshall was entitled to an $8,125 credit to be applied toward the Property’s purchase price for his first quarterly lease payment, earnest money deposit, and security deposit; therefore, the amount Marshall had to pay was reduced from $127,391.93 to $119,266.93. Because Lindsly agreed to finance $100,000 of the purchase transaction, Mar
 
 *1178
 
 shall was instructed to pay $19,266.93 at the closing.
 

 ¶ 10. The chancellor warned Marshall that if he did not bring the money to the closing, the commercial property contract would be void, and Marshall would be required to pay $8,750 for his failure to pay rent from August 2006 through January 2007. Furthermore, if Marshall failed to close on the property, he would have to vacate the premises by September 30, 2007. In the event that Marshall did not vacate the premises, the court stated that it would enter an order to vacate the premises, which, if not followed, would be considered as Marshall’s defaulting on his contractual duties under the lease agreement and the commercial property contract. If such were to occur, Marshall would be responsible for paying Lindsly an additional $7,988.89 for attorney’s fees, court costs, and other expenses.
 

 STANDARD OF REVIEW
 

 ¶ 11. This Court will not reverse a chancellor’s factual findings unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Holliman v. Charles L. Cherry &
 
 Assocs.,
 
 Inc.,
 
 569 So.2d 1139, 1145 (Miss.1990) (overruled on other grounds). “The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact-finder. Appellate courts review questions of law de novo.”
 
 Cherry Bark Builders v. Wagner,
 
 781 So.2d 919, 921(¶ 5) (Miss.Ct.App.2001) (citation omitted).
 

 ANALYSIS
 

 I. The contract entered into between the parties is clear and unambiguous.
 

 ¶ 12. Marshall believes that the chancery court correctly ordered specific performance of the contract; however, he and Lindsly appear to disagree over what specific performance should entail. Specific performance of a contract may be ordered only when the court determines that the contract is reasonably complete and reasonably definite on material points.
 
 Leach v. Tingle,
 
 586 So.2d 799, 802 (Miss.1991).
 

 ¶ 13. “The most basic principle of contract law is that contacts must be interpreted by objective, not subjective standards. A court must effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.”
 
 Dunlap Acres, Ltd. v. Intervest Dev. Corp.,
 
 955 So.2d 345, 348(¶ 13) (Miss.Ct.App.2006) (citation omitted). The Mississippi Supreme Court has provided a three-tiered approach to be used in contract interpretation.
 
 Tupelo Redevelopment Agency v. Abernathy,
 
 913 So.2d 278, 284(¶ 13) (Miss.2005). The reviewing court must first apply the “four corners” test, which looks to the language used by the parties in expressing their agreement.
 
 Id. If
 
 that does not give the court a clear understanding of the parties’ intentions, the reviewing court should apply the discretionary “canons” of contract construction.
 
 Id.
 
 Finally, if the parties’ intentions still remain unclear, the reviewing court should consider extrinsic or parol evidence.
 
 Id.
 

 ¶ 14. This Court will enforce a contract that is “clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity.”
 
 Bert Allen Toyota, Inc. v. Grasz,
 
 909 So.2d 763, 770(¶ 20) (Miss.Ct. App.2005) (citation omitted). We find that the language used in both the lease agreement and the commercial property contract falls within those parameters and should be enforced. We also find that the commercial property contract between
 
 *1179
 
 Marshall and Lindsly is reasonably complete and definite, thus allowing specific performance to be a potential remedy.
 

 ¶ 15. Upon our review of the record, it is clear that Lindsly intended to sell the Property to Marshall, and Marshall intended to purchase the Property from Lindsly. The disagreement between the parties arose over the Property’s purchase price and closing costs; therefore, we look to the relevant provisions of the lease agreement and commercial property contract to determine the appropriate resolution. Paragraph 27 of the lease agreement is particularly important regarding Marshall’s option to purchase:
 

 (a) This agreement provides an option for Tenant to purchase the property per thé legal description attached as Exhibit “A” prior to October 1, 2005 for the sum of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00), or for the sum of One Hundred Thirty-Five Thousand Dollars ($135,000.00) on or after October 1, 2005 and prior to expiration [of] the initial lease on September 30, 2007.
 

 (b) Should Tenant elect to purchase the property by January 31, 2005, Landlord will apply first quarterly Lease payment of Five Thousand Two Hundred Fifty & No/100 ($5,250.00) to purchase price of the property. Should Tenant elect to purchase the property on or after February 1, 2005 and during the term of the initial Lease, Landlord will apply one-half of all monthly rent payments, or Eight Hundred and Seventy-Five [Dollars] and No/100 ($875.00) per month, to the purchase price of the property.
 

 (c) With acceptable down payment, Landlord agrees to finance $100,000 of sale price of property for five (5) years at a rate not to exceed six percent (6%) amortized over fifteen (15) years. The remaining balance will be due at the end of five (5) years. There shall be no penalty for pre-payment of all or part of principle at any time during this term.
 

 (d) Landlord, as Seller, will agree to pay [attorney’s fee for Warranty Deed and Certificate of Title. Tenant, as Buyer, will pay for Appraisal, Survey, Loan Costs and other closing costs as necessary.
 

 (e) Tenant will notify Landlord in writing of his intention to exercise the option to purchase. Landlord will provide Purchaser with a clear title and a warranty deed of the property. Property taxes will be prorated as of the closing date and closing will be within thirty (30) days of receiving purchaser’s letter of intent to purchase.
 

 In addition, paragraph 3 of the commercial property contract expressly states that Marshall is responsible for paying “Attorney's] Fees including Certificate of Title and transfer instrument,” and paragraph 16 says the contract “incorporates all prior agreements between the parties.”
 

 ¶ 16. Marshall decided to purchase the property prior to October 1, 2005; thus, the terms of the contract dictate that the Property’s purchase price be $125,000. In addition, the lease agreement and commercial property contract provided that Marshall would be expected to pay attorney’s fees, taxes, and interest. We, therefore, agree with the chancery court’s ruling that Marshall is responsible for paying $127,391.93, which represents $125,000 for the Property; $611 for attorney’s fees, $1,002 for prorated taxes; $532.35 for county taxes; and $246.58 for interest.
 

 ¶ 17. Marshall expressed his intent to purchase the Property in a letter written on January 10, 2005. Because this was done before January 31, 2005, paragraph 27(b) of the lease agreement provides that Marshall’s first quarterly lease payment of $5,250 will be applied toward the
 
 *1180
 
 Property’s purchase price. In addition, paragraph 4 of the commercial property contract reads as follows: “Buyer has deposited with Broker the sum of
 
 $2,000.00
 
 cash/ check as earnest money, which ... is to be applied to the cash down payment on closing of this transaction.” Consequently, the sum of $2,000 should also be credited toward Marshall’s outstanding balance. Finally, paragraph 5 of the lease agreement addresses the $875 security deposit and states that it “shall be returned to the Tenant after proper termination of this Lease”; therefore, Marshall may also apply that amount toward the purchase price. Accordingly, Marshall is entitled to a credit of $8,125, which reduces the total amount he must pay from $127,391.93 to $119,266.93.
 

 ¶ 18. The terms of the lease agreement also state that the closing would take place within thirty days of receiving Marshall’s letter of intent to purchase; however, the closing never occurred. We agree with the chancery court’s findings that the delay cannot be solely attributed to just one party. Both parties engaged in conduct that contributed to the delay, and while they were not necessarily acting in bad faith, neither party appeared to act diligently to effectuate the closing. Therefore, we are in agreement with the chancery court’s order that Marshall and Lindsly must exercise all due diligence in scheduling and completing the closing on the Property as soon as possible. Due to the fact that Lindsly agreed to finance $100,000 of the transaction, Marshall will be expected to pay $19,266.93 at the closing.
 

 ¶ 19. We hereby affirm the ruling of the chancery court; however, we remand this case so the chancellor may impose an appropriate schedule since his original September 2007 deadlines expired during this appeal process.
 

 II. Marshall is not entitled to credit for all periodic payments made to Lindsly.
 

 ¶ 20. Marshall argues that the letter he wrote to Dove on January 10, 2005, properly notified Lindsly in writing of his intention to exercise the option to purchase as required by paragraph 27(e) of the lease agreement. By writing that letter, Marshall contends that the relationship between him and Lindsly was transformed from a landlord/tenant relationship to a buyer/seller relationship, and any payments he made after signing the commercial property contract should be credited toward the Property’s purchase price.
 

 ¶ 21. As previously mentioned, when construing a contract, our focus is on the objective fact — the language used by the parties.
 
 Osborne v. Bullins,
 
 549 So.2d 1337, 1339 (Miss.1989). The commercial property contract does not contain any provisions regarding credit for lease payments, so we will instead look to the lease agreement.
 

 ¶ 22. The only reference of applying lease payments toward the Property’s purchase price is found in paragraph 27(b) of the lease agreement. It says that if Marshall were to elect to purchase the Property by January 31, 2005, Lindsly would apply his first quarterly lease payment of $5,250 to the purchase price, but if Marshall elected to purchase it on or after February 1, 2005, then one-half of all monthly lease payments ($875 per month) would be applied.
 

 ¶ 23. Marshall wrote his letter of intent before January 31, 2005. Pursuant to the terms of the lease agreement, Marshall’s first quarterly lease payment of $5,250 will be applied toward the purchase price of the Property. Neither the lease agreement nor the commercial property con
 
 *1181
 
 tract contains any provisions that would allow all of Marshall’s lease payments be applied toward the purchase price. Accordingly, we affirm the chancery court’s ruling, and this issue is without merit.
 

 III. Lindsly is entitled to attorney’s fees.
 

 ¶ 24. Finally, Marshall contends that, under the terms of the contract, the prevailing party is entitled to receive attorney’s fees; therefore, he believes the chancery court erred in ordering him to pay Lindsly $611 for attorney’s fees. Lindsly, on the other hand, points to the language in paragraph 15 of the lease agreement where it states: “If Tenant is in default hereunder, and Landlord employs and/or consults with an attorney to give advice or to enforce or defend the Landlord’s rights or remedies hereunder, Tenant shall pay all attorney’s fees, court costs and other expenses occasioned by such Default.” In addition, Lindsly claims that because Marshall failed to comply with the chancery court’s order, he now owes her $7,988.89 in attorney’s fees.
 

 ¶ 25. “[E]nforcing a contract ‘without enforcing the clause addressing attorney's] fees would be contrary to the law.”
 
 Indus. and Mech. Contrs. of Memphis, Inc. v. Tim Mote Plumbing, LLC,
 
 962 So.2d 632, 638(¶ 19) (Miss.Ct.App.2007) (quoting
 
 Theobald v. Nosser,
 
 752 So.2d 1036, 1042(¶ 24) (Miss.1999)). For reasons previously discussed, we will give much deference to the lease agreement and commercial property contract. Paragraph 3 of the commercial property contract states that Marshall would be responsible for paying “[a]ttorney[’s] fees including Certificate of Title and transfer instrument,” and paragraph 27(d) of the lease agreement states that Marshall would “pay for Appraisal, Survey, Loan Costs and other closing costs as necessary.” In addition, Dove e-mailed Marshall on May 3, 2005, notifying him that the amount owed in attorney’s fees was $611. Accordingly, we affirm the chancery court’s ruling that Marshall is, in fact, responsible for paying Lindsly $611 for her attorney’s fees.
 

 ¶ 26. Lindsly’s also asserts that Marshall now owes $7,988.89 for failing to comply with the chancery court’s order. The order issued by the chancery court imposed deadlines with which the parties were instructed to comply in order to effectuate the closing. Specifically, the closing was ordered to occur no later than September 20, 2007, and, if it did not, Marshall was instructed to vacate the premises by September 30, 2007. In the event that Marshall failed to comply with the court’s orders, he would be considered as being in default of his contractual duties under the lease agreement and commercial property contract, and he would be responsible for paying Lindsly’s attorney’s fees, court costs, and other expenses in the amount of $7,988.89. Because these deadlines expired during this appeal process, we remand this case to the chancery court for the chancellor to impose an appropriate time schedule.
 

 ¶ 27. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ„ CONCUR. KING, C.J., AND MAXWELL, J., NOT PARTICIPATING.