STANDARD OIL COMPANY, APPELLANT, v. A. E. DYE AND CORA DYE, RESPONDENTS.*

Springfield Court of Appeals. September 23, 1929.

*Corpus Juris-Cyc References: Vendor and Purchaser, 39Cyc, p. 1302, n. 17; p. 1641, n. 14; p. 1644, n. 62.

*Lorts & Breuer* for appellant.

*Wm. P. Elmer* for respondent.

SMITH, J.—This is an action filed in the circuit court of Dent county, Missouri, on the 16th of October, 1926, and at the April Term, 1927, of said court, on application of the plaintiff a change of venue was awarded to the circuit court of Reynolds county, and a trial was had there before the court on the 31st day of May, 1928.

This suit was based upon a petition in which the plaintiff alleged that on the 10th day of November 1925, it entered into a contract in writing with the defendants, giving the plaintiff an option of purchase from the defendants of the following described real estate, located in Dent county, Missouri, to-wit: The west half of lot 3 of block 23 in West Salem, in the city of Salem, at an agreed purchase

price of $6200 a copy of which said written option of purchase was attached to said petition; that thereafter, and within the time limit of said contract, the plaintiff accepted said option by informing the defendants that it would take said property as provided in said contract. The plaintiff alleged that at the time of the written contract for the purchase of said real estate, there was a valuable frame building on said real estate worth more than $1000 and upon which the defendants carried insurance against loss by fire. That after the plaintiff had accepted the option of purchase and before the defendants had executed to plaintiff their deed of conveyance, the building was destroyed by fire and the defendants had collected from the insurance company the sum of $1000 for the loss thereon.

The plaintiff alleged that said building was a valuable appurtenance on said real estate and that its destruction reduced the value of said real estate in the sum of $1000; that after the destruction of said building and after defendants had collected the insurance, they refused to turn over said money or any part thereof to the plaintiff and refused to execute and deliver to plaintiff their deed unless the plaintiff paid the price of $6200 as stipulated in the option of purchase, notwithstanding the loss and destruction of said building; that the plaintiff paid the defendants $6200 with the understanding and agreement that the plaintiff reserved the right to force its claim against the defendants for the $1000 received by the defendants as fire insurance on the building, and received a deed from the defendants conveying title to the plaintiff for said real estate. Plaintiff further alleged that the defendants were entitled to collect the amount of insurance, but as a matter of law they were compelled to hold the same for the benefit of plaintiff as their vendee. Closing with a prayer for an order of court, declaring the defendants the holder and trustee of said money, to-wit, $1000 for the benefit of plaintiff and that they be required to pay all of the same to plaintiff.

A demurrer to said petition was filed but overruled, whereupon the defendants filed an answer admitting the execution of the option contract and admitting that the plaintiff agreed to pay the purchase price of $6200 for the property described and admitting the execution to the plaintiff of a general warranty deed to said real estate, and admitting that the defendants collected the sum of $1000 from said insurance company after the acceptance of the option of purchase by plaintiff and before the deed was executed.

Defendants in said answer averred that the building located on said premises was regarded as of no value by the plaintiff and averred that the plaintiff repeatedly offered to sell it at $50 to anyone who would remove it from said premises and that the loss of said building by fire would not reduce the value of the premises to plaintiff. That after the destruction of said building by fire the defendants

offered to rescind the contract with the plaintiff and to relieve the plaintiff from the obligation of purchasing the property under its contract, and offered to return to plaintiff all earnest money paid under said option, but that the plaintiff refused to accept defendants offer to rescind the contract and be released from said contract, but held to carry the same out and pay the sum of $6200 to the defendants, at which time plaintiff's agents were informed by the defendants that no change would be made in the contract of purchase and that the plaintiff must stand upon the contract as written, or refuse to accept and carry out the same.

Defendants averred that when the plaintiff paid the sum of $6200 that plaintiff attempted to reserve the right to enforce a claim against the defendant for $1000 but that such attempt was merely an act upon part of plaintiff to which at no time did the defendants agree, and that the defendants did not at any time become the trustee either by agreement or in law, for the use and benefit of the plaintiff, for the amount of insurance so collected by them. That the insurance policy was drawn in the name of A. E. Dye, one of the defendants and that the same was never assigned to the plaintiff nor contracted to be assigned to the plaintiff, and that the plaintiff had no right to the same.

The plaintiff filed its replication in which it says that it is not true as alleged in defendants' answer that the building destroyed by fire was worthless, but that same was a valuable and useful building and worth the amount of insurance recovered by defendants for its loss. That it is not true that the defendants did not consent to or agree that the plaintiff should reserve its right to institute legal proceedings for the recovery of the $1000 held by the defendants as insurance money for the destruction of said building, but that said reservation was made in writing on the back of checks delivered to the defendants by plaintiff as the purchase price of said lots and that the same was so understood an accepted at the time by the defendants. And with a general denial of each and every allegation of new matters set up in the answer of defendants.

The cause was taken under advisement by the court until November 28, 1928, and judgment rendered for the defendants. In due time, motion for new trial was filed and overruled and proper steps taken for appeal.

We have examined the abstract of the record and find that the attorney for the appellant has made a fair statement of the case and the facts as shown by the testimony and we adopt his statement which is as follows:

"The appellant has appealed from a finding and judgment of the circuit court of Reynolds county, Missouri, rendered at the November Term, 1928, of said court, the appellant here being the plaintiff, and

the respondents the defendants in said cause. The respondents are now and for many years prior to the institution of this suit, have been residents of Salem, in Dent county, and were the owners of the real estate hereinbefore described, upon which there was situated a frame building, a part of which being two stories, and the remainder a story and a half. The building was seventy feet long and forty feet wide, which the respondents were using for storage of feed, and other food stuffs handled by them. At the time of the sale, the respondents were carrying insurance on said building to the amount of $1000 against loss or damage by fire. The appellant was desirous of buying respondent's real estate as a location for a filling station in Salem, and ascertained from respondents that the same could be bought for $6200. The appellant thereupon, through its agents and employees, entered into a written option with respondents for the purchase of said real estate for a consideration of $6200, with the privilege to the appellant of exercising said option within thirty days after the date thereof. The option was exercised within the time allowed, and notice given the respondents.

"Between the time of the exercising of the option and the payment of the purchase price and delivery of the deed, the building on the lots sold was totally destroyed by fire, and the insurance money, $1000, was collected in full from the insurance company by the respondents. There was no agreement or provision of any kind between the respondents and the appellant as to the insurance when the sale of said property was agreed upon. Neither the insurance policy nor a copy thereof was offered in evidence at the trial of this cause, and no oral testimony was offered as to any of the provisions of the policy.

"After exercising of the option and the destruction of the building by fire, and before the execution of the deed conveying the real estate to the appellant, appellant's agent, one Allen, went to Salem to pay the purchase price and receive the deed, and at that time he asked respondents to deduct $1000, the amount received by them as insurance, from the purchase price, and tendered them a check for $5200. This, the respondents refused to do, and refused to execute the deed to the lots unless the appellant would pay the full amount of the purchase price of $6200, and allow them to retain the $1000 received as insurance for the loss of the building. However, there were some further negotiations between the parties in an attempt to compromise, and the evidence showed that the respondents offered the appellant $200 of the insurance money, and the appellant offered to accept $500, but failing to reach a settlement, and in order to have respondents execute their deed to said lots, the appellant, through its agent, some few days later returned to Salem, and paid the respondent the full amount of the purchase price in three checks, one for $5200 and two each for $500, allowing respondents to retain the

$1000 they had received from the insurance company, but this settlement was over the protest of the appellant who reserved its right to institute suit for the recovery of the insurance money received by the respondents. The reservation of this right was written on each of the checks delivered to the respondents, and are referred to in the bill of exceptions herein, as plaintiff's exhibits "D," "E" and "F." The evidence showed that while the respondents used the building as a storage place for their stock of feed and food stuffs, yet the insurance was all on the building; that the building was worth $1000 to him for that purpose; that it saved him a rental of $25· per month. The evidence did not disclose why the insurance company paid this insurance to the respondents after they had contracted for the sale of the property, and whether or not the company had any knowledge of such sale is not a matter of evidence. The deed conveying the real estate to the appellant was finally executed and delivered under the circumstances herein related, and the appellant took possession and located its filling station thereon.

"There is little difference, if any, as to the facts in the case, as shown by the evidence of appellant and respondents on the trial of this cause. At the close of all the evidence, the appellant offered a declaration of law, which is referred to in the bill of exceptions herein as plaintiff's declaration of law No. 1, and which was by the court overruled, after which the court rendered judgment for the defendants."

The plaintiff requested the following declaration of law:

"The court declares the law to be that, if defendants, on the 10th day of November, 1925, for a valuable consideration, entered into a contract in writing with the plaintiff, giving the plaintiff an option of purchasing the following described real estate in the city of Salem, Dent county, Missouri: The west half of Lot three of block twenty-three in West Salem, at any time within thirty days thereafter, at an agreed purchase price of sixty-two hundred dollars, and at the time there was a building standing on said premises insured for the sum of one thousand dollars, against loss by fire, and if before the expiration of the option, so executed by defendants, the plaintiff exercised said option and entered into a valid contract for the purchase of said premises, and that thereafter and before the deed conveying said premises to the plaintiff was executed and delivered by the defendants, said building was destroyed by fire, and that the defendants collected one thousand dollars, the amount of the policy of insurance against said loss, and that the defendants refused to reduce the purchase price of said premises to the amount of insurance collected, or any part thereof, but demanded and the plaintiff paid with protest, the full amount of the contract price, sixty-two hundred dollars, then and in that case, the defendants held the one thousand

dollars, collected as insurance on said building, for the benefit of the plaintiff, and that the plaintiff is entitled thereto.''

The court refused this declaration of law, and proper exceptions were saved, and the refusal to give this by the court is urged here as error, and we think properly so.

We have been unable to find in this State a case exactly like the one before us, but we have found cases of similar character where the courts have given expressions that have guided us in arriving at the conclusion reached.

The rule of the appellate courts, as gathered from the greater weight of authorities, is that a purchaser is deemed in equity to be the owner under circumstances like this, and the vendor merely retaining the legal title, as security for the unpaid purchase money, and the purchaser must bear any loss resulting from the accidental destruction of the building, and is compelled to pay the agreed purchase price and is entitled in equity as between himself and the vendor to the proceeds of insurance held by the vendor for a loss occurring after the contract of sale, and the vendee may demand that such money be applied to the satisfaction of the purchase price or the restoration of the property. And the fact that the contract is carried out without an abatement of the price does not effect the right of the purchaser. 27 R. C. L., p. 559, sec. 298, and cases cited thereunder.

Our own courts have spoken upon this proposition for in the case of Manning v. Insurance Company, 123 Mo. App. 456, 99 S. W. 1095, at page 461, we find this language: ''After a valid contract of sale of real property and before a deed is made the vendor merely holds the legal title in trust for the purchaser, and, if there be unpaid purchase money, as security therefor. All must agree that after a valid contract of sale all appreciation of the property is the purchaser's, and so also, necessarily all depreciations.''

The Manning case, supra, held that the purchaser could not collect the insurance because of a provision of that kind in the policy. The insurance company there was taking advantage of that provision with the policy. But such is not the case here, for the insurance company paid the policy regardless of a change of ownership or interest in the title.

At page 462 in the Manning case, supra, we find this language: ''It seems clearly to be the law, without reference to a provision of the nature we have quoted from this policy, that if property is destroyed by fire between the contract of sale and the deed, the vendor may recover the amount of the loss on his contract of insurance, yet he will hold it for the benefit of his vendee (Skinner v. Houghton, 92 Md. 68, and authorities cited therein) and, doubtless, if the vendee owed on the purchase money, he could claim the amount of insurance

collected by the vendor as diminishing the indebtedness to that extent."

It would not be just and equitable for the defendants to receive pay from the plaintiff and at the same time collect the insurance money for the loss. [Mahan v. Home Insurance Company of New York, 205 Mo. App. 592, 226 S. W. 593, and cases cited.]

The case of William Skinner & Sons Shipbuilding & Dry Dock Co. v. Houghton et al. (Maryland Appeals) 48 A. 85, is a case very similar to the one under consideration here, and has been cited with approval in many jurisdictions, including our own State, and in that case we find this language, which we think is appropriate here:

"As the purchase money was paid in full, it is manifest that any amount Mrs. Houghton might receive from the insurance companies would be that much more than, by the terms of the agreement, she could have expected to get out of the property. On the 4th of April the total moneyed interest she had in the property was $50,000, less the $200 already paid, as by her agreement she had parted with all interest she had in it on payment of that sum. It is true, she had an insurable interest in the property until the purchase money was paid, but that was all she had in equity; and, as this is a case in equity, we must determine it from the standpoint, and it is unnecessary to discuss the rights of the parties as viewed by courts of law. When she took out the policies she was the sole owner of the property, but when the option was accepted her estate was divided into a legal and an equitable one. From that time she held the title as trustee for the appellant, under an obligation to convey it to it upon payment of the purchase money. Under a contract of this kind, in equity, 'the vendee is in fact considered as the owner of the land, and, although the vendor may still retain the title, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, with a lien on the estate as security for any unpaid portion of the purchase money.' [McRae v. McRae, 78 Md. 283, 27 Atl. 1038.]"

And again in the discussion of that case the court used this appropriate language:

"When, therefore, the purchase money is paid to the vendor, and all his interest in the property insured is extinguished, upon what principle should he be entitled to recover for himself any additional sum paid by reason of the destruction of the property which he had already been paid for? It would not only be contrary to the well-established principle of the law which prohibits a trustee from using the trust property for his personal gain, but it would be contrary to public policy, to subject a vendor, remaining in possession, to the temptation of either destroying the property by fire, or of being guilty of such gross negligence concerning it as might produce that result. . . . Without reference to the authorities, it would seem to be manifestly just and equitable that when a court of equity is

934

called upon to determine to which of two parties a fund is to be paid, resulting from the destruction of a property in which both were interested, but the one has received payment from the other of all the interest he had, while the other is to be the sufferer by reason of the destruction of the property, it should be awarded to the latter. If that be not so, the one would receive more than the contract contemplated, while the other would receive less."

In this case there is practically no difference between the testimony of the plaintiff and that of the defendant. The material facts are not controverted. The declaration of law as requested by the plaintiff should have been given under the uncontroverted facts, and, it follows, that if such declaration of law is proper, the judgment of the court is for the wrong party.

The judgment should be reversed and remanded with directions to enter judgment for the plaintiff for the amount prayed in its petition, and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.