# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00192-SCT

*JIMMY REA AND SAMMIE C. REA*

*v.*

*THE BREAKERS ASSOCIATION, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/94 |
| TRIAL JUDGE: | HON. RAY HILLMAN MONTGOMERY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOSHUA J. WIENER |
| ATTORNEY FOR APPELLEE: | WILLIAM P. FEATHERSTON, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 4/4/96 |
| MOTION FOR REHEARING FILED: | 4/16/96 |
| MANDATE ISSUED: | 6/13/96 |

**BEFORE DAN M. LEE, C.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On September 9, 1993, The Breakers Association, Inc. (the Association), filed a Complaint for Judicial Foreclosure in the Chancery Court of Madison County against the condominium unit owned by Jimmy Rea and Sammie C. Rea, alleging that the Reas were delinquent in paying their monthly carrying charges to the Association. The Reas answered by affirming that they were ready, willing and able to pay all amounts found to be lawfully due to the Association. They counterclaimed that the Association had failed to maintain their unit as required by the Association's governing declaration of covenants and bylaws. The Reas sought a declaration that the Association's imposition of a 20% per month late charge on delinquent monthly carrying charges was unlawful under Miss. Code Ann. § 75-17-27 (1972). During the pendency of this action, and with notice to the court and opposing counsel, the Reas tendered in trust to their counsel all amounts claimed to be due by the Association.

¶2. The case was tried on January 26, 1994. Ruling from the bench at the conclusion of the trial, the chancellor awarded the Association judgment for the full amount of carrying charges and late charges which

it sought. He specifically denied the Reas' request for a declaration that the Association's 20% per month late charge is unlawful. The Chancellor granted the Reas relief on the other portion of their counterclaim, ordering the Association to perform various repairs and maintenance items within forty-five days.

¶3. The Reas promptly paid in full the amount of the judgment entered below, and filed their appeal to this Court. Aggrieved, they assign as an issue:

> *Whether the Chancellor erred in refusing to declare unlawful the Association's 20% per month late charge on Defendants' "delinquent" monthly carrying charges?*

¶4. The Association cross-appeals, assigning as an issue:

> *Whether the court below erred in failing to award the full amount of the attorney's fees incurred by appellee in the prosecution of its action to collect delinquent homeowners assessments owed by the Reas?*

## FACTS

¶5. Jimmy Rea and Sammie Rea, husband and wife, were owners of a condominium unit at "The Breakers, " located on the Ross Barnett Reservoir in Madison County, Mississippi. The condominium complex, the legal name of which is "The Breakers Association, Inc.," was established under the Mississippi Condominium Law, Miss. Code Ann. § 089-9-1 (1972), as a homeowners' association of condominium unit owners, pursuant to a declaration of covenants and bylaws (hereinafter declaration) recorded in the land records of Madison County.

¶6. The land on which The Breakers is located is leased by the Association from the Pearl River Water Valley District. Subject to the "land lease," unit owners receive title to their unit as a separate parcel of real property commonly conveyed by an "assignment of leasehold interest" recorded in the land records of Madison County.

¶7. The declaration provides that all owners of dwelling units shall be members of the Association. The members elect a board of governors, which is charged with management of the Association. The board of governors hires a general manager and staff to attend to the day-to-day work of managing the Association's finances, and maintaining the complex.

¶8. The declaration provides that the Association will charge each unit owner a monthly "assessment or carrying charge." The carrying charges defray the Association's common expenses, including the expenses associated with managing the Association and maintaining the common areas of the complex.

¶9. The Association is also obligated to maintain and repair the exteriors of the owners' dwelling units. In addition to monthly carrying charges, unit owners are invoiced for their *pro rata* share of the casualty insurance carried by the Association, and their share of the land lease.

¶10. The bylaws authorize the board to fix a penalty or "late charge" on delinquent payments. The board of governors of the Association adopted a 20% late fee to be charged on unit owners' delinquent monthly charges. If a unit owner fails to pay a monthly carrying charge, and the default continues for an entire year, the unpaid monthly carrying charge will be assessed each month with a 20% late fee, resulting in annual total late fees equaling 240% of the amount due.

¶11. Unpaid late charges from a preceding month are added to the principal balance due the next month, to which the 20% per month late charge is applied. By charging 240% per annum on each monthly payment, and by charging late fees on unpaid late fees, the Association accrues a balance due from the unit owner that grows exponentially.

¶12. Upon default by a unit owner in paying monthly carrying charges, the bylaws authorize the Association to "bring an action against the member personally obligated to pay the same, or foreclose on the lien against the unit or units then belonging to said member in the manner provided for in the foreclosure of mortgages, deeds of trust or other liens on real property in the State of Mississippi." *See* Miss. Code Ann. § 89-9-21 (1972) (personal liability of condominium owner, and subjection of dwelling unit to foreclosable lien).

¶13. This dispute ripened when the Reas began to wilfully withhold payment of their monthly carrying charges. They did so to show their dissatisfaction with the manner in which the Association was maintaining the exterior of their unit. The Reas hoped that withholding payment would "get the Association's attention."

¶14. Discussions and meetings took place between the Reas, the Association's general manager, and the board regarding the Reas' complaints about the maintenance of their unit. The Reas presented their grievances at a meeting with the board of governors in April 1993, including a discussion of the maintenance and repairs needed at their unit, and stated their displeasure with the Association's 20% per month late charge. Believing that a constructive dialogue had been established at the April 1993 meeting with the board of governors, the Reas brought their account current immediately after the meeting.

¶15. After attending the April 1993 meeting and bringing their account current, the Reas continued to be dissatisfied by the Association's efforts to repair and maintain their unit, which they characterized as inadequate "patchwork." Also, they continued to be at an impasse with the Association regarding its adoption of the 20% per month late charge, which the Reas believed to be unfair and unlawful. Accordingly, the Reas resumed withholding payment of their monthly carrying charges.

¶16. The Association posted notice of the Reas' delinquency and pending foreclosure at every unit in the complex. It also recorded in the Madison County land records a notice of assessment, claiming a lien upon the Reas' unit. The Association then commenced this action seeking judicial foreclosure of the Reas' unit.

¶17. At the time of the filing of the complaint, the Association alleged that the Reas were delinquent in paying carrying charges to the Association in the amount of $1,154.75. By the time of trial, the Association showed the Reas' accumulated unpaid account balance to be $3,320.50. Of this amount, $1,378.83, or 42% of the balance, consisted of late charges.

¶18. The Reas answered and counterclaimed, affirming that they were ready, willing and able to pay all amounts lawfully due the Association. The Reas alleged, however, that the Association had failed to maintain the exterior of their unit as required by the declaration of covenants. Further, the Reas challenged, under Miss. Code Ann. § 75-17-27, the board of governors' adoption of a 20% per month late charge on unit owners' delinquent carrying charges.

¶19. During the pendency of this action in the trial court, the Reas tendered all amounts invoiced by the Association to their counsel. With notice to counsel opposite and the court, this amount was held in counsel's trust account pending the outcome of the trial.

¶20. Much proof was presented by both parties regarding the Association's maintenance and repair of the Reas' unit. Ruling from the bench at the conclusion of the trial, the chancellor, among his other rulings, ordered the Association to perform various repairs to the Reas' unit within forty-five days.

¶21. The chancellor rebuffed the Reas' challenge to the Association's late charges, and upheld the full amount of the Association's claim for principal, interest and late charges due, plus part of its attorneys' fees claim, for a total of $3,652.55. The Reas promptly paid this amount in full from the funds that had been held in escrow, and notice of satisfaction of the judgement was duly recorded. Although not disclosed by this record, upon request of the Reas, the Association later canceled the notice of assessment against the unit which it had recorded in the Madison County land records.

## Standard of Review

**¶22.** This Court's standard of review in passing on questions of law is *de novo*. *Hattiesburg Area Senior Svcs. v. Lamar County*, 633 So. 2d 440, 444 (Miss. 1994); *In the Matter of the Estate of Mason v. Fort*, 616 So. 2d 322, 322 (Miss. 1993); *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990). "Notwithstanding our respect for and deference to the trial judge, on matters of law it is *our* job to get it right. That the trial judge may have come close is not good enough." *Cooper*, 587 So. 2d at 239, quoting *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So. 2d 746, 754 (Miss. 1987).

## LAW

**1. *Whether the Chancellor erred in refusing to declare unlawful the Association's 20% per month late charge on the Reas' "delinquent" monthly carrying charges?***

¶23. This is a case of first impression in Mississippi and involves a pure question of law: whether the Association's 20% per month late charge on delinquent "assessments or carrying charges" is lawful.

¶24. The Reas have established that the Association invoices its members monthly for a fixed amount of carrying charges, levies late charges of 20% on the unpaid balance, and, upon failure to pay, seeks judicial foreclosure of the lien it holds on the owners' dwelling, together with a personal judgment against the owner. The Reas assert the Association cannot claim to be anything but a secured creditor of the unit owner, and that its interest charges must be governed by the limits prescribed by statute.

¶25. In addressing the above issue there are two sub-issues which must first be addressed. First, whether Miss. Code Ann. § 75-17-27 (1972) applies in this case, and, if so, what late charges are lawful?

*A. Does Chapter 17 of Title 75 apply to the facts of this case?*

¶26. The Reas challenge the Association's 20% per month late charge under § 75-17-27, which provides:

**§ 75-17-27. Late payment charges.**

A late payment charge, not exceeding Five Dollars ($5.00) or four percent (4%) of the amount of any delinquency, whichever is greater, if contracted for in writing, shall not be considered a finance charge, but no such charge shall be made unless such delinquency is more than fifteen (15) days past due; provided, however, that such late payment charge may be collected only one (1) time on a

specific installment and no late payment charge may be collected on a partial payment resulting from the deduction of a late payment charge from a regular scheduled payment. On loans of One Hundred Thousand Dollars ($100,000.00) or less having a stated maturity of five (5) years or less, such late payment charge shall in no event exceed Fifty Dollars ($50.00).

¶27. The condominium owner's obligation to pay reasonable monthly carrying charges to the Association goes unchallenged. *See Perry v. Bridgetown Community Assoc., Inc.*, 486 So. 2d 1230 (Miss. 1986).

¶28. The Reas instead contend that where a condominium owner's obligation to pay monthly carrying charges to a condominium association exposes the unit owner to personal liability, and is secured by a foreclosable lien upon the owner's dwelling, the obligation is governed by § 75-17-27.

¶29. Section 75-17-25 defines "finance charge" as follows:

**75-17-25. Meaning of "finance charge"; exclusion of prepayment penalties and default charges; effect of excessive finance charge.**

The term "finance charge" as used in this section, Sections 75-17-1 . . . [and] 75-17-27 . . . means the amount or rate paid or payable, directly or indirectly, by a debtor for receiving a loan or incident to or as a condition of the extension of credit, including, but not limited to, interest, brokerage fees, finance charges, loan fees, discount, points, service charges, transaction charges, activity charges, **carrying charges**, time price differential, finders fees or any other cost or expense to the debtor for services rendered or to be rendered to the debtor in making, arranging or negotiating a loan of money or an extension of credit and for the accounting, guaranteeing, endorsing, collecting and other actual services rendered by the lender; provided, however, that recording fees, motor vehicle title fees, attorney's fees, insurance premiums, fees permitted to be charged under the provisions of Section 79-7-7, service charges as provided in Section 81-19-31, and with respect to a debt secured by an interest in land, bona fide closing costs and appraisal fees incidental to the transaction shall not be included in the finance charge.

(Emphasis added.)

¶30. This Court concludes that the 20% late payment charge for a delinquent carrying charge is usurious and violates Section 75-17-27 which expressly states "[a] late payment charge, not exceeding Five Dollars ($5.00), or four percent (4%) of the amount of any delinquency, whichever is greater, if contracted for in writing shall not be considered a finance charge . . . ." Miss. Code Ann. § 75-17-27 (1972).

¶31. Section 75-17-25 expressly states:

[t]he term "finance charge" as used in this section . . . [and] Section 75-17-27 . . . means the amount or rate paid or payable, directly or indirectly, by a debtor . . . incident to or as a condition of the extension of credit, including but not limited to . . . carrying charges . . . or any other cost or expense of the debtor for services rendered or to be rendered to the debtor in making, arranging or negotiating . . . an extension of credit . . . ."

¶32. Under the Association's bylaws, the Association has the power of foreclosure. Thus a mortgagor/mortgagee relationship is created. Title 75 of the Mississippi Code (1972) applies to payments of carrying charges to a condominium association where the unit owner is personally liable for payment and

where such payments are secured by a foreclosable lien on the owner's dwelling unit.

## B. What late charges are lawful?

¶33. The Reas assert that the chancellor concerned himself only with the question of whether **any** late charge was properly charged in this case, and failed to address the question of the lawful amount of the late charge.

¶34. Assuming the chancellor was correct in finding that the Association was entitled to impose some amount of late charges on the Reas' account, the question remains: what is the maximum amount that can be charged?

¶35. We find that the late charges in question violate the usury statutes. Pursuant to Section 75-17-27, late charges are not included in computing the total amount of a finance charge, provided, the late charge does not exceed the maximum amounts set forth therein. Here, the late charge exceeds the $5.00 or 4% limits, pertaining to the maximum amount, and must be computed as a part of the total finance charge.

¶36. This Court concludes that the Assocation in carrying over monthly balances and imposing further 20% late charges on the accumulated balance, also violates the prohibition against charging a delinquent payment with more than one late charge.

¶37. The late charges in this case exceed the statutory limit. The penalty is set by Section 75-17-25 which provides in part:

> If a greater finance charge than that authorized by applicable law shall be stipulated for or received in any case, all interest and finance charge shall be forfeited, and may be recovered back, whether the contract be executed or executory. If a finance charge be contracted for or received that exceeds the maximum authorized by law by more than one hundred percent (100%), the principal and all finance charges shall be forfeited and any amount paid may be recovered by suit.

¶38. The 20% late charge is usurious. We therefore reverse and render the chancellor's decision and remand this case for a computation of the excess finance charge collected by the Association, the amount of refund due the Reas, and reasonable attorney's fees owed the Reas.

**II.** *Whether the court below erred in failing to award the full amount of the attorney's fees incurred by the Association in the prosecution of its action to collect delinquent homeowners assessments owed by the Reas?*

¶39. The Association's argument for reasonable attorney's fees is without merit since we have found for the Reas. Under the covenants and bylaws of the Association "the prevailing party shall be entitled to recover the costs of the proceeding and such reasonable attorneys' fees as may be awarded by the court."

## CONCLUSION

**¶40.** As to the direct appeal, we hereby reverse and render the decision of the lower court and find the carrying charges and assessments to constitute usury. We remand to the lower court for the purpose of determining penalties, interest, and reasonable attorney's fees owed the Reas.

¶41. As to the cross-appeal, we hereby reverse and render the decision of the lower court.

¶42. **AS TO THE DIRECT APPEAL: REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**AS TO THE CROSS-APPEAL: REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**