# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00435-SCT

*JOE MILLER AND ALICE MILLER*

*v.*

*PARKER McCURLEY PROPERTIES, L.L.C. AND PARKER McCURLEY, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/2008 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LAWRENCE E. ABERNATHY, III |
| | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEES: | WAYMAN DAL WILLIAMSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED - 06/10/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Joe Miller and Alice Miller (the Millers) filed suit against Parker McCurley Properties, L.L.C.,[1] and Parker McCurley (McCurley), individually, in the Chancery Court for the Second Judicial District of Jones County, alleging, *inter alia*, breach of contract and statutory violations by McCurley. This action involves the contract for purchase of a home

---

[1] The chancery court found that Parker McCurley Properties, L.L.C., was not a party to the agreement between the parties nor a recipient of any insurance proceeds. Thus, the chancery court dismissed this entity as a defendant and rendered judgment in its favor.

by the Millers from McCurley, where the home subsequently was rendered uninhabitable by Hurricane Katrina. The chancellor found all the elements of breach of contract and ordered "that all sums paid by the Millers to McCurley be refunded to them less the reasonable fair rental value of the property while they occupied it." As a result of this ruling, McCurley was able to retain the insurance proceeds as well as the subject property. Aggrieved by the entry of the chancery court's judgment, the Millers appeal to this Court, and McCurley cross-appeals. In the end, we affirm on both the appeal and the cross-appeal.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On November 1, 2002, McCurley, as seller, and the Millers, as buyers, entered into an agreement pertaining to the sale and purchase of property located at 1119 North 8th Avenue in Laurel. The Agreement provided for a purchase price of $39,000, with a down payment of $3,000.[2] The balance of $36,000 plus nineteen percent interest was to be paid in 300 monthly payments of $575 over a twenty-five-year period.[3] The payments were to be due on the first day of each month, and the Agreement called for a $50 late fee if monthly payments were not received by 5:00 p.m. on the sixth day of each month.

¶3. The Millers also were required to pay all property taxes and to purchase and maintain property insurance, at their expense, naming McCurley and Union Planters Bank, along with themselves, as loss payees on the insurance policy. McCurley had executed a deed of trust

---

[2]McCurley purchased the house for $5,500 on or around September 12, 2002.

[3]This is amortized at approximately $172,500, not including land taxes, insurance premiums, and late fees.

on the property to Union Planters Bank for an amount not to exceed $55,287.50. However, the Millers were unable to secure insurance, since according to the agreement, the property would not be conveyed, and a warranty deed delivered to the Millers, until all payments had been made to McCurley. As a result, the parties agreed that McCurley would secure the insurance for the Millers, and the Millers would pay McCurley the premiums. McCurley secured insurance on the property in the amount of $35,000, but the Millers were not named as loss payees on the insurance policy.

¶4.     On August 29, 2005, the widespread destruction wrought by Hurricane Katrina rendered the property uninhabitable. The Millers lived other places temporarily before asking McCurley if he had another house available. McCurley provided the Millers with another property on Meadow Lane in Laurel. The Millers made their customary monthly payment of $575 to McCurley in September 2005, and they subsequently made a partial payment for their occupancy of the Meadow Lane property for a portion of October 2005. In October 2005, the Millers moved out of the Meadow Lane property, because, according to the Millers, McCurley had told them their payments would increase on this property after September 2005.

¶5.     At the time of the loss on August 29, 2005, the insurance on the subject property was with Shelter General Insurance Company (Shelter). Shelter estimated that replacement costs, less nonrecoverable depreciation, amounted to $42,720.21; thus, after applying the $1,000

3

deductible, Shelter paid the policy limit of $35,000 to McCurley.[4] McCurley did not use any of the insurance proceeds to repair the property.

¶6.     On June 15, 2006, the Millers filed their Complaint against McCurley in the Chancery Court for the Second Judicial District of Jones County, seeking an accounting of all monetary transactions involving the property, including insurance proceeds; an adjudication of the rights of each of the parties to the property; equitable distribution of the insurance proceeds; attorneys' fees; and any other proper equitable remedies. Before the chancery court, the parties stipulated to the amounts the Millers owed McCurley for insurance from November 1, 2002, through August 2005, and they stipulated to the amounts owed for taxes in the years 2002 through 2004. The parties did not stipulate to the amount owed for taxes for 2005; however, the chancellor determined the Millers' pro rata share of the taxes through August 2005. The parties also stipulated, and the chancellor found, that the Millers had paid McCurley a total of $25,415.77 in payments through August 2005, which included four late fees. The loan amortization schedule showed that a principal balance of $35,760.67 was owed as of September 1, 2005. The matter was tried on March 18, 2008, Chancellor Franklin C. McKenzie, Jr., presiding. On November 18, 2008, Judge McKenzie entered his Judgment, including findings of fact and conclusions of law, ordering that all sums paid by the Millers to McCurley be refunded, less the fair rental value of the property while the Millers had occupied it, and granting the Millers post-judgment interest at nineteen percent per annum.

_____

[4]The check issued to McCurley by Shelter was actually in the amount of $33,879.11.

4

¶7. The Millers filed their Motion to Reconsider on December 1, 2008, and McCurley filed his response on December 16, 2008. A hearing on the Motion to Reconsider as well as a motion to supplement the record on the issue of fair market rental value was held before Judge McKenzie on March 3, 2009. On March 11, 2009, Judge McKenzie entered his Order Denying Motion to Reconsider and Judgment. The judge determined that the fair rental value of the property during the Millers' period of occupancy was $375 per month, and the chancellor thus awarded the Millers judgment against McCurley in the amount of $12,665.77, with post-judgment interest at the rate of nineteen percent per annum. From this judgment, the Millers timely filed their Notice of Appeal, and McCurley filed his Notice of Cross-Appeal.

## DISCUSSION

¶8. The Millers present five issues for this Court's consideration: (1) whether the chancellor erred in failing to award the insurance proceeds to the Millers based on the fact that the Millers had paid all of the insurance premiums and therefore, should be entitled to the benefits of the insurance proceeds; (2) whether the chancellor erred in failing to award penalties provided by Mississippi Code Section 75-17-25 for the collection of late fees which violated the provisions of Mississippi Code Section 75-17-27; (3) whether the chancellor erred in failing to rule that McCurley had violated Mississippi Code Section 75-17-1(4); (4) whether the chancellor erred in granting relief which was not requested by McCurley; and (5) whether the chancellor erred in failing to award the Millers the insurance benefits, finance charges, and attorney's fees. McCurley cross-appealed, asking this Court to rule that the

5

proceeds from the policy are held by the seller in trust for the benefit of the buyer, and in the first instance, are to be applied to the remaining balance owed to the seller under the contract and any excess tendered to the buyer. Thus, if the insurance proceeds paid off the balance of the loan, then the buyer is entitled to conveyance of the real property via a warranty deed under the contract. McCurley relies on caselaw from other jurisdictions for this argument.

¶9.     This Court employs a limited standard of review in reviewing the decisions of a chancery court judge. *Parker v. Livingston*, 817 So. 2d 554, 557-58 (Miss. 2002) (citing *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997)). A chancellor's findings will not be disturbed on appellate review "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Powell v. Campbell*, 912 So. 2d 978, 981 (Miss. 2005) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000); *Bank of Miss. v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)). This Court reviews a chancellor's decision under an abuse-of-discretion standard. *Id*. (citations omitted). Questions of law, however, are reviewed de novo. *Parker*, 817 So. 2d at 558 (citing *Consol. Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999)).

¶10.    The issues will be restated for the sake of today's discussion.

## I.      WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD THE INSURANCE PROCEEDS TO THE MILLERS.

¶11.    The Millers argue that, because they paid the insurance premiums prior to the destruction of the property, they should receive the insurance proceeds. In determining relief for the Millers, the judge considered "the equities between the parties and the situation in

6

which they find themselves following the destruction caused by Hurricane Katrina." After a thorough review of caselaw from other jurisdictions concerning the rights of parties in a land-sale contract to insurance proceeds, the judge found the caselaw unpersuasive, especially in light of the fact that Mississippi had ample caselaw on which he could base his decision. As such, the judge ultimately analyzed this case from a breach-of-contract standpoint.

¶12. First, the chancellor recognized the forfeiture clause in the agreement between the parties, which stated, in pertinent part:

> In case of failure of the [Millers] to make any of the payments . . . or failure to perform any of the covenants for a period of thirty (30) days after the due date thereof, the agreement shall be forfeited and terminated . . . and the [Millers] shall forfeit all payments made on this contract, and such payments shall be retained by [McCurley] as due or accumulated rent on the property.

Properly construing Mississippi law, the judge reiterated that "[c]ourts of equity are not friendly to forfeitures," and "[e]quity abhors a forfeiture." *Maxey v. Glindmeyer*, 379 So. 2d 297, 300-01 (Miss. 1980) (citations omitted). Next, the judge applied this Court's decision in *Piaggio v. Somerville*, 119 Miss. 6, 80 So. 342, 344 (1918) ("the rule is that when a party by his own contract creates a duty or charge upon himself he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible; the answer to the objection of hardship in all such cases being that it might have been guarded against by a proper stipulation"). Based on *Piaggio*, the judge found that McCurley should have planned for contingencies in his contract with the Millers and that he had several options at the time of loss, although it was impossible for him to provide the

7

house to the Millers after its destruction. However, McCurley offered the Millers no relief other than to place them in another house for which they could not afford the payments. There are three circumstances where performance is excused: (1) a subsequent change in the law, rendering performance unlawful; (2) the destruction, from no fault of either party, of an object which has to exist for there to be performance; and (3) the illness or death of the promisor who contracted to render personal services. *Id*. Only the second circumstance applies in today's case, and it is applicable in excusing the Millers' performance under the contract, not McCurley's performance.

¶13.  Our longstanding rule on this issue previously has been discussed by this Court:

> We find the common law rule, on this subject, stated in the following manner: "'[w]here the law casts a duty on a party, the performance shall be excused, if it be rendered impossible by the act of God. But where a party, by his own contract, engages to do an act, it is deemed to be his own fault and folly, that he did not thereby expressly provide against contingencies, and exempt himself from liability in certain events; and in such case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by, or within the control of the party.'"

*Hendrick v. Green*, 618 So. 2d 76, 78 (Miss. 1993) (quoting *Harmon v. Fleming*, 25 Miss. 135, 142 (1852)). McCurley clearly had a duty to provide the property to the Millers, and Hurricane Katrina undoubtedly rendered it impossible for McCurley to continue providing the property to the Millers. However, as reasoned by the judge, McCurley, in agreeing to obtain insurance for the Millers at their expense, where he knew the Millers would be unable to obtain insurance on their own, had a duty to provide adequate insurance on the property. McCurley failed to do so, and his failure to plan for such an event does not render him

8

exempt from liability. McCurley failed to provide adequate insurance to repair the house, failed to refund the Millers' payments to them, and failed to give all or part of the insurance proceeds to the Millers at the time they were received. The judge thus did not abuse his discretion in finding that McCurley was liable to the Millers for their loss. *See Callicott v. Gresham*, 249 Miss. 103, 111, 161 So. 2d 183, 186 (1964) (citing 12 Am. Jur., Contracts, § 386 (1938 & Supp. 1964)) ("If one party to a contract prevents another party from carrying out his part of the agreement, he becomes liable in damages for the breach of the contract.").

¶14.    Finding that the parties had a binding agreement that was breached when McCurley underinsured the property and refused to share all, or a portion, of the insurance proceeds with the Millers, and that the Millers were damaged by no longer having a habitable home, by not having any of the insurance proceeds, and by not being refunded any portion of their payments, the judge found all elements of a breach of contract present in today's case. *See Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992) (listing elements for breach-of-contract claim). Thus, based on the foregoing, and in light of the evidence before the judge that the Millers never had inquired about the remaining amounts owed on the property, or a payoff coupled with the property's continued deterioration since Hurricane Katrina, the judge did not abuse his discretion in ruling:

> In order to do equity and avoid a forfeiture, the Court orders that all sums paid by the Millers to McCurley be refunded to them less the reasonable fair rental value of the property while they occupied it. Because there was no testimony or evidence presented on the fair rental value of the property the Court will leave the record open for counsel to submit information to the Court on this issue.

9

Post-judgment interest is granted to the Millers at nineteen percent (19%) per annum since the Court has already ruled that is a reasonable interest rate.

McCurley's purchase price was $5,500.00 and he will have the benefit of the insurance proceeds. He is not entitled to taxes paid by the Millers during the time because Mr. McCurley still owns the property and can start over with it if he wishes to do so. He continues to own it. McCurley alone benefitted from the insurance premiums therefore this Court will not require the Millers to be responsible for the premiums. All other relief sought is denied.

¶15. Further, the Millers assert, as a matter of law, that Mississippi Code Section 83-17-1 makes McCurley the Millers' agent for the procurement of insurance, and in the alternative, makes McCurley the insurer. Section 83-17-1(a) states that "'[a]gent' means an insurance producer as defined in this section," and subsection (f) defines an insurance producer as "a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance." Miss. Code Ann. § 83-17-1 (a), (f) (Supp. 2009). This statute is inapplicable to today's case, and the cases cited by the Millers have no application to the facts before this Court. As such, this issue is without merit.

II.     WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD PENALTIES FOR THE COLLECTION OF LATE FEES IN VIOLATION OF MISSISSIPPI CODE SECTION 75-17-27.

¶16. Mississippi Code Section 75-17-27 states:

A late payment charge, not exceeding Five Dollars ($5.00) or four percent (4%) of the amount of any delinquency, whichever is greater, if contracted for in writing, shall not be considered a finance charge, but no such charge shall be made unless such delinquency is more than fifteen (15) days past due; provided, however, that such late payment charge may be collected only one (1) time on a specific installment and no late payment charge may be collected on a partial payment resulting from the deduction of a late payment charge from a regular scheduled payment. On loans of One Hundred Thousand

10

> Dollars ($100,000.00) or less having a stated maturity of five (5) years or less, such late payment charge shall in no event exceed Fifty Dollars ($50.00).

Miss. Code Ann. § 75-17-27 (Rev. 2009). The Millers assert that their contracted-for late fee of $50 was charged on four occasions in excess of the maximum statutory amount. Section 75-17-27 allows a late-payment charge of five dollars or four percent of the amount of any delinquency, whichever is greater. The statute further provides that if the contracted-for late fee does not exceed the statutory maximum, then it will not be considered a finance charge. Thus, it would follow that a late fee in excess of the statutory maximum will be considered a finance charge.

¶17. Here, as properly determined by the judge, the Millers were charged a $50 late fee for the following delinquencies: (1) March 15, 2003, for a delinquency of $1,235; (2) June 13, 2003, for a delinquency of $1,405; (3) February 6, 2005, for a delinquency of $1,955; and (4) April 15, 2005, for a delinquency of $730. When applying four percent to these delinquencies, it yields the following permissible late fees, respectively: (1) $49.40; (2) $56.20; (3) $78.20; and (4) $29.20. Thus, two of the four late fees exceeded four percent of the delinquency, totaling $21.40 paid in late fees in excess of the statutory maximum. Therefore, the amount of $21.40 most be considered a finance charge and will be discussed further below. *See* ***Rea v. Breakers Ass'n, Inc.***, 674 So. 2d 496, 500 (Miss. 1996) (late charge exceeding maximum amount must be computed as part of total finance charge). Additionally, the judge found, as required by Section 75-17-27, that the record establishes "some delinquency for more than fifteen days" prior to a late-fee assessment. There is

11

nothing before this Court to show that the chancellor was clearly erroneous in making this finding of fact. Thus, there is no merit to this assignment of error.

### III. WHETHER THE CHANCELLOR ERRED IN FAILING TO RULE THAT MCCURLEY HAD VIOLATED MISSISSIPPI CODE SECTION 75-17-1(4).

¶18.   The Millers also assert that McCurley violated Mississippi Code Section 75-17-1(4) by charging a finance charge in excess of ten percent on residential real estate. Section 75-17-1(4) provides:

> Notwithstanding the foregoing and any other provision of law to the contrary, any borrower or debtor may contract for and agree to pay a finance charge which will result in a yield not to exceed the greater of ten percent (10%) per annum or five percent (5%) per annum above the index of market yields of the Monthly Twenty-Year Constant Maturity Index of Long-Term United States Government Bond Yields, as compiled by the United States Treasury Department, each calculated according to the actuarial method, on any loan, mortgage or advance which is secured by a lien on residential real property or by a lien on stock in a residential cooperative housing corporation where the loan, mortgage or advance is used to finance the acquisition of such stock. The term "residential real property," as used in this subsection, means real estate upon which there is located or to be located a structure or structures designed in whole or in part for residential use, or which comprises or includes one or more apartments, condominium units or other dwelling units.

Miss. Code Ann. § 75-17-1(4) (Rev. 2009). However, as argued by McCurley, subsection 5 of this statute provides that the interest rate provided for in the Agreement is lawful. Subsection 5 states:

> **Notwithstanding the foregoing and any other provision of law to the contrary, any borrower or debtor may contract for and agree to pay and any lender or extender of credit may contract for and receive any finance charge agreed to in writing by the parties, notwithstanding that such charge is in excess of that otherwise allowed on any contract, credit sale, obligation or other extension of credit**, regardless of the security taken or the

12

purpose of the extension of credit, under which the principal balance to be repaid originally exceeds Two Thousand Dollars ($2,000.00), or on any series of advances of money pursuant to a contract if the aggregate of sums advanced or originally proposed to be advanced exceeds Two Thousand Dollars ($2,000.00), or on any extension or renewal thereof; and **as to any such agreement, the claim or defense of usury or violation of any law prescribing, limiting or regulating the rate of finance charge by any borrower or debtor, or his successors, guarantors, assigns or anyone on his behalf is prohibited.**

Miss. Code Ann. § 75-17-1(5) (Rev. 2009) (emphasis added). This subsection is applicable where any debtor contracts for and agrees to pay, and any extender of credit contracts for and receives, any finance charge agreed to in writing by the parties, under which the principal balance to be repaid originally exceeds $2,000. This subsection further provides that, as to any such agreement, the claim of usury or violation of any law prescribing, limiting, or regulating the rate of finance charge by any debtor is prohibited. In today's case, Miller and McCurley contracted for – in writing by the parties – a nineteen percent interest rate where the original principal balance to be repaid exceeded $2,000. Therefore, in accordance with Section 75-17-1(5), the Millers cannot now claim usury or a violation of Section 75-17-1(4). *See **Dunlap Acres, Ltd. v. Interest Dev. Corp.***, 955 So. 2d 345, 349-50 (Miss. Ct. App. 2006) (Section 75-17-1(5) appears to allow parties to contract for interest at a rate greater than fifteen percent.). Additionally, when adding the previously discussed $21.40 in late fees, which we deem to be a finance charge, to the contracted interest rate, it does not appear that this would render the interest rate usurious under Mississippi law. Thus, the chancellor did not err in finding that neither the late fees nor the interest rate charged are usurious. We thus find this issue to be without merit.

13

## IV.    WHETHER THE CHANCELLOR ERRED IN GRANTING RELIEF NOT REQUESTED BY MCCURLEY.

¶19.    The Millers contend that the judge awarded McCurley an unrequested setoff of rental value together with the $35,000 in insurance proceeds.  We disagree with this contention.  "A setoff is a counterclaim which the defendant has against the plaintiff, but which is extrinsic to the plaintiff's claim." *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So. 2d 938, 944 (Miss. 1992) (citing *Black's Law Dictionary* 1372 (6th ed. 1990)).  McCurley was not awarded a setoff by the judge.  Rather, the judge, in seeking an equitable remedy, granted the Millers a refund of all their payments to McCurley, including taxes and insurance, less reasonable fair rental value of the property while they occupied it.  This was in no way a setoff to McCurley; it was an award to the Millers, deducting fair rental value for the benefit the Millers received in occupying the property.  Also, the judge did not grant McCurley a setoff of the insurance proceeds, but determined, in equity, not to award the  proceeds to the Millers. Therefore, this issue is meritless.

## V.    WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD THE MILLERS INSURANCE BENEFITS, FINANCE CHARGES, AND ATTORNEY'S FEES.

¶20.    The issues of insurance benefits and finance charges have been discussed previously; thus, only the issue of attorney's fees is left to be determined.  The judge correctly found no provision for attorney's fees in the event of breach of contract in the Agreement between the parties, and no statutory basis for awarding attorney's fees for a breach of contract.  Mississippi law is well-settled with respect to awarding attorney's fees.  "'If attorney's fees

14

are not authorized by the contract or by statute, they are not to be awarded when an award of punitive damages is not proper.'" *In re Guardianship of Duckett*, 991 So. 2d 1165, 1179 (Miss. 2008) (quoting *Hamilton v. Hopkins*, 834 So. 695, 700 (Miss. 2003)). In that there has been no finding for an award of punitive damages, this issue is without merit.

## CROSS-APPEAL

¶21. On cross-appeal, McCurley argues that this Court should adopt the rule applied by other jurisdictions involving the destruction of a property in the middle of the payment schedule under a land-sale contract prior to the transfer of legal title. McCurley cites authority from Tennessee, Kentucky, Alabama, and Georgia for rules of law that once an insurance company has paid the full amount of the policy to the seller, the proceeds received by the seller must be applied toward the purchase price, and upon the payment of any difference, legal title shall be transferred to the buyer. *See King v. Dunlap*, 945 S.W.2d 736 (Tenn. Ct. App. 1996); *Estes v. Thurman*, 192 S.W.3d 429 (Ky. Ct. App. 2005); *Ala. Farm Bureau Ins. Serv., Inc. v. Nixon*, 105 So. 2d 643 (Ala. 1958); *Bruce v. Jennings*, 190 Ga. 618 (1940); *Martin v. Coleman*, 2001 WL 673701 (Tenn. Ct. App. June 18, 2001). The lines of cases from these jurisdictions following this rule of law all were considered by the chancellor and found unpersuasive. The judge determined that Mississippi had ample caselaw on which he could base his decision.

¶22. The judge applied the proper legal standard and was able to provide an equitable remedy in today's case. This proposition might have had some merit when the property was damaged more than four years ago, but today, the effect of applying the rule that the

insurance proceeds are to be applied to the remaining balance owed to the seller, McCurley, under the contract, as requested by McCurley on cross-appeal, would leave the Millers with a dilapidated property[5] where they would not only have to bear the cost of the remaining balance owed McCurley, but also potentially unaffordable repair costs and/or demolition expenses. As such, this issue is without merit.

## CONCLUSION

¶23. For the reasons stated, the judgment of the Chancery Court for the Second Judicial District of Jones County is affirmed on both appeal and cross-appeal.

¶24. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**WALLER, C.J., GRAVES, P.J., KITCHENS AND CHANDLER, JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, LAMAR AND PIERCE, JJ.**

**DICKINSON, JUSTICE, DISSENTING:**

¶25. [W]herever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legem*[6] is strictly applicable.

*Magniac v. Thomson*, 15 How. 299. For decades, our courts have followed this time-tested, venerable maxim.[7] Today, however, this Court takes a different view — one I believe will,

---

[5]This property has continued to deteriorate through elemental exposure since the time of the destruction by Hurricane Katrina.

[6] Equity follows the law.

[7]*Senter v. Propst*, 190 Miss. 190, 197 So. 100, 104 (1940) ("The rule is that equity follows the law.") (citation omitted); *Daughtrey v. Daughtrey*, 474 So. 2d 598, 603 (Miss.

16

over time, prove exceedingly ill-advised and detrimental to our courts and litigants alike. I have without success attempted to persuade the majority that a chancellor's equitable powers do not extend to issues controlled by law. I therefore respectfully dissent.

## I.

¶26. In this contract case, the chancery court – in the name of its equitable powers – disregarded the parties' contract and instead attempted to achieve what it thought would be a result more just than the law of contracts could deliver. However, absent some finding that the parties' contract was unlawful, unconscionable, or void,[8] the terms of the contract, together with the principles of contract law, should have controlled the chancellor's decision.

¶27. The Millers and McCurley contracted to buy and sell a particular parcel of real estate: 1119 N. 8th Avenue in Jones County, Mississippi.[9] The contract set out the terms of the sale, including the purchase price; the financing agreement; and how, when, and under what conditions title was to be conveyed. The contract adequately described the property. Other contract terms addressed matters such as late fees, taxes, and insurance, as well as some

---

1985) ("equity follows the law"); ***Bowling v. Madison County Bd. of Supervisors***, 724 So. 2d 431, 434 (Miss. App. Ct. 1998) ("The more traditional analysis is that injunctive or other equitable relief . . . is unavailable if there exists an adequate remedy at law . . . .") (ellipses in original).

[8]The chancellor made no such finding in this case.

[9] It is not before this court whether more than one parcel with this address exists. That would have been a matter for the chancery court, if the litigants thought it important.

17

miscellaneous items. The contract rate of interest did not exceed the legal limit set by the Legislature.

¶28. After Hurricane Katrina swept across Mississippi, the Millers lived for a time in another house owned by McCurley. However, the contract for the Eighth Avenue property was still in effect, and nothing made performance of any contract obligation impossible. The contract required McCurley to convey title to the described property after the Millers paid the purchase price. The parcel still existed, despite the damage, and nothing in the contract placed the risk of loss on McCurley. Furthermore, nothing in the contract obliged the seller to repair the house before he could require performance by the buyers. The Millers were not renters; they were purchasers. Had the subject of the contract been an automobile, rather than a house, one wonders whether the majority would allow the chancellor – in the name of equitable powers – to relieve the buyer from the obligation to make car payments.

**II.**

¶29. The majority cites *Piaggio v. Somerville*, 119 Miss. 6, 80 So. 342, 344 (1919), for the rules regarding when a party to a contract is excused from performance. The majority states that of the "three circumstances where performance is excused, . . . [o]nly the second . . . applies in today's case, and it is applicable in excusing the Millers['s] performance under the contract, not McCurley's performance." That second situation is "the destruction, from no fault of either party, of an object which has to exist for there to be performance . . . ."

¶30. While the severe damage to the house on the property was a catastrophe for the Millers, it did not render contract performance for either side impossible or excusable. The

18

performance required of McCurley was to convey, after receiving $39,000 plus interest from the Millers, title to the property. The performance required of the Millers included, inter alia, paying McCurley and maintaining casualty insurance on the property. And even if one finds some merit in an impossibility-of-performance defense, the record reveals no such attempt. Furthermore, a careful review of the contract reveals that no duties on the part of either party were rendered impossible or otherwise excusable.

¶31. As for the insurance issue, the relevant considerations are whether the seller has insured the property for the benefit of the buyer, or whether the buyer has purchased insurance in accordance with a contract with the seller. Although Mississippi has no cases on point, the Georgia Supreme Court explained the issue as follows:

> It is the general rule that, where the purchaser goes into possession under a binding executory contract for the sale of improved realty which the seller is able to convey, but where, before the transfer of the legal title is consummated, the improvements are destroyed by fire without the fault of either party, the loss falls on the purchaser as the owner of the equitable title. If in such a case the property was insured by the seller, he holds the insurance money which he may collect on the bargained property as trustee for the purchaser, subject, however, to his own claims for any unpaid purchase-money plus the insurance premiums.

*Bruce v. Jennings*, 190 Ga. 618, 10 S.E.2d 56, 58 (1940) (citing *Mackey v. Bowles*, 98 Ga. 730, 734, 25 S.E. 834 (1896); *Bispham's Equity*, 5th ed., § 364; 27 R.C.L. 556; 66 C.J. 1052, 1053; *Phinizy v. Guernsey*, 111 Ga. 346, 349, 36 S.E. 796 (1900); *Brady v. Welsh*, 200 Iowa 44, 204 N.W. 235 (1925); 40 A.L.R. 603, 605, and cit.; *Godfrey v. Alcorn*, 215 Ky. 465, 284 S.W. 1094 (1936); 51 A.L.R. 925; 27 R.C.L. 559, § 298; 66 C.J. 1054, 1055 (§ 815); *Mehrtens v. Knight*, 29 Ga. App. 390, 390, 115 S.E. 506 (1923)).

19

¶32. Other authorities are in accord with the proposition that, where a contract requires the buyer to insure the property to protect the seller, then the following rule applies:

> As between a vendor and purchaser, whichever must bear the loss resulting from an injury to the property sold generally is entitled to the proceeds of fire insurance thereon. Thus, if the loss falls on the purchaser, he or she is entitled to the benefit of the insurance proceeds, and to receive it on payment of the full purchase price. In such a case, a vendor who collects the insurance proceeds holds the proceeds as trustee, for the benefit of the purchaser, subject to any claims the vendor may possess for unpaid purchase money or insurance premiums. On the other hand, if the loss falls on the vendor, he or she normally is entitled to the insurance money.

46A C.J.S. *Insurance* § 1932 (2009) (*citing **Gillingham v. Phelps***, 5 Wash. 2d 410, 105 P.2d 825 (1940); ***Bruce***, 10 S.E.2d at 56; ***Heinzman v. Howard***, 366 N.W.2d 500 (S.D. 1985); ***Standard Oil Co. v. Dye***, 233 Mo. App. 926, 20 S.W.2d 946 (1929); ***Pasker v. Harleysville Mut. Ins. Co.***, 192 N.J. Super. 133, 469 A.2d 41 (App. Div 1983); ***Brown v. Nw. Mut. Fire Ass'n***, 176 Wash. 693, 30 P.2d 640 (1934)).

¶33. The Millers agreed to purchase insurance to protect McCurley's interest in the property. The Millers failed to do what they promised, so McCurley bought the policy, using the Millers' money, as allowed under the terms of the contract. When Katrina destroyed the house, the insurance company paid the insurance proceeds to McCurley. The Millers undoubtedly are entitled to credit for the insurance proceeds, but they are not entitled to abrogate their contract.

¶34. After application of the insurance proceeds, the Millers' balance was reduced to between seven and eight hundred dollars. Upon payment of that amount, according to the contract, they are entitled to take title. Nothing in the contract or the law, changes that fact.

Nor does anything change the fact that the obligations of the parties, as spelled out in the contract, continued after August 29, 2005. The Millers were buying property under a real estate contract. The majority states that it became "impossible for McCurley to continue providing the property to the Millers," as if he were a landlord. He was a seller. He had no continuing duties, other than those in the contract. Nothing in the contract required the seller to rebuild the house if it became damaged. Purchasers of property, real and personal, protect their interest in property with insurance, not with equitable remedies in chancery court.

¶35.    We are a court of law, bound to apply it dispassionately. We may wish the Millers had not entered the contract, but they did. And having done so, they should now be entitled to remedies provided by law, not equity. For the reasons stated, I respectfully dissent.

**RANDOLPH, LAMAR AND PIERCE, JJ., JOIN THIS OPINION**.